ORIGINAL

# In the United States Court of Federal Claims

No. 14-1102C
(Filed April 20, 2017)
NOT FOR PUBLICATION

FILED

APR 20 2017

U.S. COURT OF
FEDERAL CLAIMS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
                                        \*
**DANIEL J. DRESEN,**                   \*
                                        \*
              Plaintiff,           \*
                                        \*
      v.                          \*
                                        \*
**THE UNITED STATES,**                  \*
                                        \*
              Defendant.           \*
                                        \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## OPINION AND ORDER

**DAMICH,** Senior Judge:

      Pending before the Court are the Defendant United States' motion for judgment on the administrative record regarding Daniel J. Dresen's ("Plaintiff") entitlement to retirement or severance benefits under 10 U.S.C. §§ 1201, 1203[1] and a denied promotion following a remand in 2015.[2] The Plaintiff, acting *pro se,* argued that he was illegally denied military severance and/or retirement funds and denied a promotion when the California Army National Guard found him unfit for duty and discharged him in 2014 as a result of a diagnosis of Crohn's disease in 2013. Plaintiff asked for medical severance

---

[1] Generally, 10 U.S.C. §§1201, 1203 defines who is eligible to receive either retirement (§1201) or severance (§1203) benefits as a result of medical separation from the military. Specifically relevant in the instant case, a member of the armed forces, may be eligible for retirement or severance benefits, if at the time a disability is incurred, the service member is entitled to basic pay, and has been called or ordered to active duty for a period of more than 30 days.

[2] *See Dresen v. United States,* Case No. 14-1102C, ECF No. 22 at 1 (Fed. Cl. July 30, 2015) (hereinafter "*Dresen*").

7014 1200 0000 9093 7610

equaling $33,500.00 or medical retirement. Plaintiff also requested a promotion to E-5, and any back pay.[3]

The Defendant originally argued before this Court that Plaintiff's Crohn's disease was hereditary and existed prior to Plaintiff entering military duty in 2006; consequently, Plaintiff was not eligible to receive either retirement or severance benefits upon discharge because his disease was not incurred or aggravated while he was on active duty and entitled to basic pay. Def.'s Mot. at 11-12.

Regarding aggravation, this Court held that the conclusions reached by the military review boards, that Plaintiff's Crohn's disease was not service-aggravated, was not arbitrary, capricious, or otherwise contrary to law.[4] However, regarding the onset of the disease, this Court could not conclude that Plaintiff's Crohn's disease existed prior to military service or was incurred while on active duty because there was a lack of evidence on the cause or origin of Crohn's disease. *Dresen* at 13-14. Therefore, referencing what appeared to be analogous facts in *Wollman v. United States*, 108 Fed. Cl. 656 (2013), ("*Wollman I*") this Court similarly remanded to the California National Guard ("CAARNG") to determine the cause or origin of Crohn's disease and if "genetic predisposition" and "hereditary" are synonymous, as different terms were used throughout the administrative record. The Court further ordered the CAARNG to determine whether Plaintiff's Crohn's disease existed prior to his entrance to military service and when the symptoms manifested themselves.[5]

On remand, the CAARNG entered an advisory opinion that the cause or origin of Crohn's disease is unknown and that "genetic predisposition" and "hereditary" are not synonymous. Therefore, Plaintiff could not be deemed to have incurred Crohn's disease prior to entering military service in 2006. Crohn's disease was not mentioned in his medical records when he was treated for anal fissures and underwent a hemorrhoidectomy during his initial active duty for training in 2007 nor during his deployments to Kuwait in 2008-2009 and 2010-2011.

---

[3] Plaintiff's request for retroactive promotion to the grade of E-5 was denied by this Court as non-justiciable in *Dresen* at 13.

[4] This Court ruled in *Dresen* that, if his Crohn's existed prior to his service, the record was clear that Plaintiff's symptoms were attributable to the natural progression of the disease rather than service aggravation. *Dresen* at 13

[5] Generally, a service member is deemed healthy upon entrance to military service. If a condition is incurred after the start of military service, unless it was a hereditary condition, the burden would be on the government to prove the condition was not incurred or aggravated during military service per Army Regulations. *Dresen* at 8-9. If Crohn's disease was not hereditary, the Plaintiff was entitled to the presumption that his disease was incurred while on active duty. Furthermore, the record used a variety of terms including, "hereditary," "congenital," "genetic," and "genetic predisposition." Thus, the Court was asking for clarification as to the medical understanding of these terms and if they could be used interchangeably in conjunction with how Crohn's disease is contracted.

2

The CAARNG concluded that Plaintiff's Crohn's disease was diagnosed in March 2013. After reviewing Plaintiff's medical records, the medical experts noted that Crohn's disease was not mentioned prior to the genetic testing by a civilian doctor in 2012. Unlike the plaintiff in *Wollman I*, here, Plaintiff was a member of the California Army National Guard and had not been on active duty for more than 30 days and entitled to basic pay during 2012 or 2013. Therefore, the CAARNG concluded that Plaintiff was not on active duty and entitled to basic pay at the time the disease incurred. The Army Board of Correction of Military Records ("ABCMR"), in accord with the CAARNG findings, reviewed Plaintiff's military records, and denied his request for military retirement.

The Defendant then filed in this Court a motion for judgment on the administrative record. The Plaintiff timely responded and the case is now ripe for decision. For the reasons set forth below, the Court hereby **GRANTS** the Defendant's motion for judgment on the administrative record.

## I.   Standard of Review

### A. Review of Military Decisions

The United States Court of Federal Claims acquires jurisdiction over claims for military disability retirement after an appropriate military board has evaluated the service member's entitlement to such retirement in the first instance. *Chambers v. United States*, 417 F.3d 1218, 1225 (Fed. Cir. 2005); *See also Scarseth v. United States*, 52 Fed. Cl. 458, 479-80 (2002) (claim not ripe until considered by MEB, PEB, or Army Board for Correction of Military Records). The Court's task is limited to determining whether the board's decision was arbitrary, capricious, unsupported by substantial evidence, or contrary to law. The substantial evidence standard is satisfied when the record reflects "relevant evidence [sufficient for] a reasonable mind [to] accept as adequate to support a conclusion." *Gossage v. United States*, 394 F. App'x 695, 697 (Fed. Cir. 2010). The court will not engage in a reweighing of the evidence that was before the board. *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983). Moreover, the board is entitled to a presumption that its members acted in good faith in executing their duties. *See Van Cleave v. United States*, 70 Fed. Cl. 674, 679 (2006).

### B. Motion for Judgment on the Administrative Record

When reviewing a motion for judgment on the administrative record under Rule 52.1 (c) of the RCFC, the court makes factual findings on record evidence "as if it were conducting a trial on the record." *Wollman v. United States*, 116 Fed. Cl. 419, 428 (2014) *("Wollman II")* (quoting *Bannum, Inc. v. United States*, 404 F.3d 1346, 1357 (Fed. Cir. 2005)). "Therefore, unlike a motion for summary judgment, the existence of a disputed material fact does not preclude the court from reaching a decision." *Wollman II* at 428. "Should the administrative record be silent as to some disputed facts, the court may still

render judgment if the agency provided an adequate discussion of the basis of its decision." *Id.*; *see also Rebosky v. United States*, 60 Fed. Cl. 305, 311-13 (2004).

## II. Discussion

In the previous case, the Defendant argued that the Plaintiff's claims for medical retirement or severance pay would fail since Plaintiff was not an eligible member as defined by 10 U.S.C. §§ 1201, 1203 at the time his Crohn's disease was incurred because there was "clear and unmistakable" evidence that Plaintiff's Crohn's existed prior to his entrance on active duty. Def.'s MJAR at 10 n. 5 (quoting AR 1083). The Defendant now argues that the record has been clarified and that, therefore, Plaintiff's Crohn's disease did not exist prior to his entrance on active duty. Instead, the Defendant argues that it was not medically certain that the Plaintiff had the disease until the diagnosis in March 2013, two years after Plaintiff's last active duty deployment. The Defendant notes that the ABCMR concluded that the disease was not incurred while Plaintiff was on active duty for more than 30 days and entitled to basic pay and denied Plaintiff's request for military retirement. The posture in this case has changed in a way not anticipated by this Court. Therefore, the focus of this Court's review is now on the conclusion that the Plaintiff's Crohn's was not incurred until March 2013 when he was not on active duty.

### A. Crohn's is Not Hereditary

On February 9, 2016, Dr. Conrad Salinas, the State Surgeon for the CAARNG, answered the Court's remand by stating that the cause or origin of Crohn's disease "is at present incomplete." AR 1082-84. In his report, Dr. Salinas stated that the terms "genetic" and "hereditary" are considered to be synonymous but that the term "genetic predisposition" and "genetic disease" are not. AR 1082. Specifically, "the factors which cause an individual who is genetically predisposed to ultimately develop the disease are as yet uncertain." AR 1083. According to the medical community, Crohn's disease "may only be diagnosed when objective medical findings meet established criteria." *Id.* Thus, only after specific genetic testing which identify a genetic predisposition to the disease, a colonoscopy, and a biopsy are performed on an individual is a diagnosis of Crohn's established. *Id.*

### B. Plaintiff's Crohn's Disease Did Not Incur during Military Service

Turning to the Plaintiff's medical history, Dr. Salinas stated that the Plaintiff had periods of constipation and rectal bleeding and anal fissures in 2007 and 2008 which led to surgical intervention. *Id.* Nowhere in the medical records do the clinicians' notes suggest these symptoms raised concerns of Crohn's disease. *Id.* His rectal bleeding and anal fissures were attributed to constipation. *Id.* Additionally, Dr. Salinas noted that "[a]ccording to the National Institutes of Health (NIH), the most common symptoms of Crohn's are abdominal pain and diarrhea." AR 1083. Plaintiff's medical records do not indicate a complaint of abdominal pain until 2013. *Id.* The testing on Plaintiff indicating

the genetic predisposition to Crohn's was completed in 2012 by a civilian doctor and only after a colonoscopy and tissue biopsy in March 2013 was a diagnosis of Crohn's disease actually confirmed. *Id.* Dr. Salinas stated that "it is not possible to conclude with medical certainty that the disease was present prior to these March 2013 findings." *Id.* Further, Dr. Salinas highlighted that Plaintiff was not on active duty for over 30 days and entitled to basic pay during 2012 and 2013 which distinguished Plaintiff's case from the active duty soldier in *Wollman I*. *Id.*

On February 16, 2016, the ABCMR requested an additional review and advisory opinion, by the Army's Office of the Surgeon General, of the Plaintiff's records, in response to Plaintiff's request for a medical retirement. AR 1081.

On March 3, 2016, Dr. David Twillie issued an advisory opinion to the ABCMR that Plaintiff was not eligible for a medical retirement and had been appropriately recommended for separation. AR 1079-80. Dr. Twillie described the medical interventions that Plaintiff received in 2007 and 2008 as "self-limiting and not associated with his eventual unfitting diagnosis." AR 1079. Dr. Twillie stated that in November 2013 the Plaintiff received a medically disqualifying profile for Crohn's disease and that the recommendation for separation from service was in accordance with Army Reg. 40-501, CH 3-10 and AR 635-40. AR 1080. The ABCMR concluded that in accord with the expert medical opinions, Plaintiff's Crohn's disease was not incurred during the time that he was on military orders for more than 30 days and entitled to base pay and thus was not entitled to a military retirement. The reports of Drs. Salinas and Twillie and the involvement of the CAARNG, point to the conclusion that the ABMCR's findings were not arbitrary, capricious, unsupported by substantial evidence, or contrary to law.

### C. The ABCMR Denies Request to Correct Military Records

The Court notes that although it was not requested by this Court, the ABCMR again reviewed Plaintiff's military record for error, provided Plaintiff an opportunity to rebut the preliminary findings, and ultimately denied his request for correction to his military record and medical retirement. After review, this Court concludes that the ABCMR findings are not arbitrary, capricious, unsupported by substantial evidence, or contrary to law.

On September 29, 2016, the ABCMR entered its opinion denying Plaintiff's request for a military retirement finding no probable error, injustice, or correction to his military records. AR 1051. Plaintiff raised multiple issues and argued that (1) his non-duty related Physical Evaluation Board ("NDR-PEB") should have been reconvened, (2) he should have been referred to a Physical Evaluation Board after his surgeries in Kuwait, (3) he should have been referred to a Medical Evaluation Board for his Traumatic Brain Injury ("TBI"), (4) his line of duty determination for hemorrhoids, anal fissures, rectal bleeding, and anal leakage should have been ruled to have occurred in the line of duty, (5) the VA disability award of 90% demonstrates he should have been medically retired from the military, (6) he was unlawfully denied promotion to E5, and

(7) his Crohn's disease is a result of the anthrax vaccinations he received as a member of the military.

The ABCMR's conclusions regarding Plaintiff's NDR-PEB should not be reconvened was not arbitrary, capricious, unsupported by substantial evidence, or contrary to law. Plaintiff's NDR-PEB had begun in June 2014 and he voluntarily requested discharge on August 4, 2014 because of his medical disqualification for retention. AR 1065. The Plaintiff's voluntary discharge request ended the review in accordance with Army regulations. *Id.*

The ABCMR's finding that the lack of referral to a Physical Evaluation Board after his sphincterotomy or to a Medical Evaluation Board for his TBI was not in error. The ABCMR noted that there was no evidence in his record that he could not perform his duties when he was released from active duty after his deployments which was when the surgery and TBI occurred. *Id.* Additionally, the "mere presence of impairment does not, of itself, justify a finding of unfitness and referral to a [Medical Evaluation Board]." *Id.* Plaintiff also argued that his line of duty determination for his hemorrhoids, anal fissures, rectal bleeding, and anal leakage should have been ruled to have occurred in the line of duty. The ABCMR found that multiple reviewers of Plaintiff's medical records confirmed the findings in accordance with regulations that these conditions were *not* in the line of duty and not a result of Plaintiff's misconduct. AR 1066 (emphasis added). Therefore, the ABCMR's finding was not arbitrary, capricious, unsupported by substantial evidence, or contrary to law.

The ABCMR responded to Plaintiff's argument that his VA disability award of 90 % is inconsistent with his separation from the military, explaining that "an award of a VA rating does not establish error or injustice in an Army rating or discharge." AR 1065; *see* Title 38 U.S.C. §§ 1110, 1131. Furthermore, the ABCMR concluded that a later VA disability award to a discharged soldier is not proof that at the time of separation, the soldier was unfit for military service. AR 1065; *see also Chambers v. United States*, 417 F.3d 1218, 1227-28 (Fed. Cir 2005). Therefore, the ABCMR's finding was not arbitrary, capricious, unsupported by substantial evidence, or contrary to law.

In response to the Plaintiff's contention that he should have been promoted to E-5, the ABCMR ruled that the Plaintiff did not provide any evidence to support his claim. AR 1066. Additionally, the ABCMR noted that this Court had denied the request for promotion. As such this finding by the ABCMR was not arbitrary, capricious, unsupported by substantial evidence, or contrary to law.

Lastly, the ABCMR rejected Plaintiff's argument that his anthrax vaccinations caused or aggravated his Crohn's disease. *Id.* Plaintiff was not diagnosed with Crohn's disease until 2013, two years after his release from active duty. *Id.* Numerous medical authorities reviewed Plaintiff's military records and all agreed that his Crohn's disease was not aggravated by anthrax vaccinations or his military service. *Id.* Additionally, the ABCMR reviewed reports by a number of medical authorities including the National Academy of Sciences, Institute of Medicine, and the CDC, and have concluded that there

are no "definitive links between anthrax vaccinations and [illnesses or] unexpected adverse events." *Id.* Thus, the ABCMR's finding was not arbitrary, capricious, unsupported by substantial evidence, or contrary to law.

### III. Conclusion

For the reasons set forth above, the Court **GRANTS** Defendant's motion and **DENIES** Plaintiff's request for relief. The Clerk is **DIRECTED** to enter judgment accordingly and to close the case.

**IT IS SO ORDERED.**

EDWARD J. DAMICH
Senior Judge